MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor-in-Possession,
METRORIVERSIDE, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

METRORIVERSIDE, LLC,

        Debtor.

Case No. 14-30901-DM-11

Chapter 11

**DECLARATION OF SIAVASH BARMAND IN SUPPORT OF FIRST DAY MOTIONS**

Date: June 18, 2014
Time: 9:30 am
Place: 235 Pine Street, 22nd Floor
       San Francisco, California

Honorable Dennis Montali

I, Siavash Barmand, declare:

1.     I am a Manager of MetroPacific Properties, LLC, which is a managing member of MetroRiverside LLC, Debtor-in-Possession. I am over the age of 18.

2.     I have custody and control over the records of the Debtor. The records of the Debtor are kept in the ordinary course of business by persons who have a business duty to make such records on behalf of the Debtor. The records of the Debtor are made at or near the time of the occurrence of events that are recorded. I have personal knowledge of the facts set forth herein based on my review of the records of the Debtor. If called as a witness, I could and would competently

1

testify as follows.

3. This Declaration is filed in support of the following motions (collectively, the "First Day Motions") filed concurrently herewith:

    (a) Motion for Order Authorizing Use of Cash Collateral;

    (b) Motion Authorizing Debtor to Continue Pre-Petition Cash Management Practices;

    (c) Motion Authorizing Payment for Goods Received Within Twenty Days of the Petition Date and Establishing Administrative Claims Bar Date for 503(b)(9) Claims.

## I. General Factual Background and History of the Debtor

4. The Debtor is the owner of five (5) parcels of certain real property in downtown Riverside, California. A true and correct copy of the legal description of the aforesaid parcels of real property is attached hereto as Exhibit "A" and is incorporated herein by reference. The Debtor operates a Hyatt Place hotel (the "Hotel"), franchised from Hyatt Place Franchising LLC. The Hotel is located at 3500 Market Street, Riverside, California. The Debtor is also owner of an adjacent parking lot.

5. The Debtor's managing members are: MetroPacific Properties, LLC and Pinnacle Investment Partners, L.P.

6. On March 2, 2010, the former Redevelopment Agency of the City of Riverside ("Riverside RDA") and the Debtor entered into the Fox Plaza Project Hotel Construction Loan Agreement ("Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit "B" and incorporated herein by reference. The purpose of the Loan Agreement was to provide a loan to the Debtor in the amount of $20,660,000.00 (the "Loan") to finance the construction, completion, and initial operation of the Hotel, associated vehicular parking spaces, and related improvements in downtown Riverside.

7. On March 2, 2010, the Debtor made, executed and delivered to Riverside RDA a Promissory Note in the principal sum of $20,660,000.00. A true and correct copy of the Promissory Note is attached hereto as Exhibit "C" and incorporated herein by reference.

8. Further on March 2, 2010, the Debtor delivered a Deed of Trust, Security Agreement,

2

Assignment of Rents, and Fixture Filing (the "Deed of Trust") to Riverside RDA. By the terms of the Deed of Trust, the Debtor, as trustor, conveyed and granted to First American Title Insurance Company, as trustee, the following real property in trust for the benefit and security of Riverside RDA: (1) the Land; (2) any and all buildings, landscaping, and other improvements to the Land, including without limitation fixtures, attachments, appliances, equipment, and machinery; and (3) other related real property interests described in Article I, Section 1.1. of the Deed of Trust. The Debtor also assigned to Riverside RDA, all rents, profits, royalties, fees, and other rights to payments and benefits, as further detailed in Article I, Section 1.2 of the Deed of Trust. Additionally, the Debtor granted to Riverside RDA a security interest in personal property, including personal property used for the operation of the Hotel, all present and future deposit and operating accounts, and other interests as set forth in Article I, Section 1.3 of the Deed of Trust. The Deed of Trust was recorded on March 30, 2010. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "D" and incorporated herein by reference.

9. Riverside RDA filed a UCC-1 Financing Statement (Document No. 10-7228025239) with the Secretary of State of California pursuant to the Deed of Trust to secure a first-priority lien on all existing and future personal property of every kind and description owned by the Debtor, including but not limited to deposit accounts, goods, machinery and equipment, general intangibles, rents, fees and income of the Debtor. A true and correct copy of the UCC-1 Financing Statement is attached hereto as Exhibit "E" and incorporated herein by reference.

10. On March 2, 2010, Riverside RDA and myself, individually, and Pinnacle Investment Partners, L.P., entered into a Non-Recourse Carveout Guaranty Agreement with respect to the Loan.

11. The Hotel is managed by the Rim Corporation ("Rim"). The Debtor and Rim entered into a hotel management agreement on January 5, 2011 (the "Hotel Management Agreement"). A true and correct copy of the Hotel Management Agreement is attached hereto as Exhibit "F" and incorporated herein by reference.

12. On May 13, 2014, the City of Riverside filed the action styled *City of Riverside as Successor Agency to the Former Redevelopment Agency of the City of Riverside v. MetroRiverside,*

*LLC, a California limited liability company; DOES 1 through 100, inclusive*, in the Superior Court, County of Riverside (Case No. RIC 1404945). The Complaint seeks: (1) Judicial Foreclosure; (2) Specific Performance for Appointment of Receiver for Assignment of Rents; (3) Accounting; and (4) Declaratory Relief. The City of Riverside asserts that the Debtor defaulted on the terms of the Loan Agreement by allowing the Hotel Reserve Fund account balance to dip below $750,000.00.

13. On May 19, 2014, City of Riverside filed an ex-parte application for an order to show cause re: the appointment of receiver and preliminary injunction. A hearing thereon was set for June 13, 2014.

## II. Motion for Order Authorizing Use of Cash Collateral

14. The only party holding a lien against the Debtor's real and personal property is the City of Riverside in the amount of $20,660,000.00.

15. The Debtor is seeking authority to use cash collateral in the ordinary course of business for the purpose of paying the operating expenses of the Hotel in the categories identified in the Debtor's budget from June 2014 through September 2014, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated herein by reference.

16. The aforesaid budget identifies the Debtor's ordinary expenses for the months of June 2014 through September 2014. The Debtor's average expenses were approximately $351,428.75 per month from January through April 2014. A true and correct copy of the Debtor's profit and loss statement from January through April 2014 is attached hereto as Exhibit "H."

17. The Loan with the City of Riverside requires semi-annual interest only payments in the amount of $538,268.75 until September 2014. In September 2014, it is estimated that the required semi-annual payment on the Loan will increase to the approximate amount of $750,000.00. The Debtor is current on the Loan payments, and the Debtor intends to remain current post-petition. Additionally, the City of Riverside's claim is adequately protected by the Hotel Reserve Fund, which maintains a balance of $398,782.62, as of May 31, 2014. The City of Riverside's claim will also be secured by a replacement lien against post-petition cash collateral with the same nature, extent, priority and validity as its pre-petition lien.

18. The Debtor will be able to pay all expenses and principal and interest due as of

4

September 1, 2014, by drawing down the interest reserve to $244,491.65. A true and correct copy of a forecast report is attached hereto as "Exhibit I" and incorporated herein by reference.

19. I am requesting authority to use cash collateral for the purposes of preservation of the Hotel. Without the ability to use cash collateral to pay ordinary business expenses, the Debtor will have to shut down the Hotel.

### III. Motion Authorizing Debtor to Continue Pre-Petition Cash Management Practices

20. In the ordinary course of business, the Debtor maintains an integrated cash-management system that provides well-established processes for the collection, concentration, management, monitoring, and disbursement of funds generated and used in its operations (the "Cash Management System"). The Cash Management System enables the Debtor to effectively manage and monitor the inflow of revenue from customers and the outflow of disbursements to suppliers, vendors, and payments for franchise fees, marketing fees, insurance, utilities, maintenance and other administrative expenses required for the operation of a large hotel. It is critical that the Cash Management System remain intact to ensure seamless operation of the Debtor's business.

21. The Cash Management System consists of six bank accounts (collectively, the Bank Accounts"). Included in the Bank Accounts is the Debtor's primary account (Analyzed Business Checking Account, with the account number ending in 0106) (the "Main Account") at Wells Fargo. It is in the Main Account where cash is generally concentrated, where incoming payments and revenue is deposited, and from where disbursements in the ordinary course of business are made. This account is managed by Rim in performance of its management duties under the Hotel Management Agreement.

22. The Debtor maintains a Business High Yield Savings Account (with the account number ending in 8173) (the "Property Tax Reserve Account") at Wells Fargo. It is in the Property Tax Reserve Account that Rim, on behalf of the Debtor, deposits $5,250.00 per month for property taxes and pays property taxes when due.

23. The Debtor also maintains a Business High Yield Savings Account (with the account number ending in 7753) (the "FF&E Reserve Account") at Wells Fargo. Each month, Rim deposits 3% of anticipated gross revenues into the FF&E Reserve Account for expenditures and replacements

5

of furniture, fixtures and equipment, as set forth in an annual FF&E budget included in the Annual Plan.

24. The Debtor maintains a Business High Yield Savings Account (with the account number ending in 5662) (the "Hotel Reserve Fund") at Wells Fargo for the benefit of the City of Riverside. Pursuant to Article III, Section 3.6 of the Loan Agreement, the Debtor is to maintain a Hotel Reserve Fund.

25. Further, the Debtor maintains a Gold Business Services Package Account (with the account number ending in 5508) (the "Cash Sweep Account") at Wells Fargo. Pursuant to the Loan Agreement, the Debtor is required to maintain the Cash Sweep Account. Per a later agreement with the City of Riverside, the Debtor does not use this account; from December 2013 to May 2014, the balance in the Operating Account has been $100.00.

26. As part of the Debtor's ordinary business, the Debtor and Rim use a range of business forms, including letterheads, purchase orders, and invoices (collectively, the "Business Forms"), without reference to the Debtor's debtor-in-possession status. If the Debtor were required to change the Business Forms, it would be an unnecessary and expensive burden on the estate.

27. All of the Debtor's Bank Accounts are at Wells Fargo and the Bank of Marin, which are federally insured banking institutions and depositories approved by the United States Trustee.

28. Maintaining the Cash Management System in its current state is crucial to the Debtor's Hotel operations. The Cash Management System is designed pursuant to the requirements in the Loan Agreement, the Cash Management Agreement, and the Hotel Management Agreement.

29. Cash Management Systems are complicated and require skill and training in their use and administration. The practices encompassed by the Cash Management System are well established and have been working seamlessly and efficiently for the Debtor. The Debtor has utilized the Cash Management System for many years and has maintained a relationship with its banks. The Debtor also believes that the practices in place are standard within its industry and are essential to the successful operation of its business.

30. Here, the Debtor in its business judgment has determined that it is in the best interest

6

of the estate to maintain its Cash Management System, its current Bank Accounts and Business Forms. These systems enable the Debtor to operate and monitor its finances, disbursements, revenues and tax obligations accurately. The Debtor operates a hotel and transacts with guests and vendors on a daily basis, even a brief disruption would cause harm in terms of cancelled reservations, lost revenues and reputational damage.

### IV. Motion Authorizing Payment for Goods Received Within Twenty Days of the Petition Date and Establishing Administrative Claims Bar Date for 503(b)(9) Claims

31. Within 20 days prior to the Petition Date, the Debtor received goods from vendors and creditors on credit in the ordinary course of business. The Debtor believes it is essential that some of these creditors continue to be paid in the ordinary course of business in order to allow for business to continue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed the 13th day of June, 2014, at Tiburon, California.

/s/Siavash Barmand
SIAVASH BARMAND